UNITED SERVICES AUTOMOBILE ASSOCIATION, PLAINTIFF v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, DEFENDANT

No. 9110SC198

(Filed 16 June 1992)

**Insurance § 92.1 (NCI3d) — loaner car — garage liability policy — driver's family policy — primary and secondary coverage**

A dealer's garage liability policy provided primary coverage and the driver's family automobile policy provided secondary coverage for an accident involving a loaner car being used while a truck purchased from the dealer was being repaired where each policy contained language purporting to establish itself as secondary coverage in the presence of other coverage.

**Am Jur 2d, Automobile Insurance §§ 2, 220.**

APPEAL by plaintiff from judgment entered 9 January 1991 in WAKE County Superior Court by *Judge Henry V. Barnette, Jr.* Heard in the Court of Appeals 2 December 1991.

This case presents the question of determining primary and secondary coverage between two insurance policies when each policy contains a clause purporting to establish itself as secondary coverage in the presence of other applicable coverage. Plaintiff United Services Automobile Association (hereinafter "USAA") is the insurance carrier for William H. Murdaugh, Jr. (hereinafter "Murdaugh"). USAA insures Murdaugh's family vehicles including a 1983 Ford Escort. Defendant Universal Underwriters Insurance Company (hereinafter "Universal") is the insurance carrier for Helmold Ford, Inc. of Raleigh, North Carolina. Universal insures the automobiles of the dealership. These include those automobiles for sale by the dealership and those used in the operation of the dealership.

Prior to 18 June 1985, Murdaugh brought his 1983 Ford Escort to Helmold Ford as a trade-in on a 1985 Ford truck. On 15 June, Murdaugh instructed USAA to delete his Ford Escort from his policy and then requested USAA to add the Ford truck on 17 June. The purchase date of the Ford truck was to be 18 June; however, minor problems with the truck prevented it from being delivered on this date. The registered title to the truck remained with Helmold Ford until all necessary repairs were made on the truck. Helmold Ford provided Murdaugh with a Ford LTD for his use while waiting for repairs to be completed on the truck. The LTD's title was held by Helmold Ford and dealer tags issued to Helmold Ford were used on the car.

Murdaugh gave permission to his son to drive the Ford LTD on 18 June. Murdaugh's son was an insured driver according to the language found in both the USAA policy and the Universal policy. Murdaugh's son was involved in a collision with another car on 18 June which seriously injured one person in the other car. This accident gave rise to a lawsuit against Murdaugh and his son for the personal injuries of the other party.

Murdaugh then made repeated requests upon Universal to defend him and his son in the lawsuit filed against them. Universal declined these requests. Murdaugh then assigned and transferred his rights against Universal to USAA who then agreed to defend Murdaugh according to the conditions set out in the USAA policy.

**UNITED SERVICES AUTO. ASSN. v. UNIVERSAL UNDERWRITERS INS. CO.**

[106 N.C. App. 465 (1992)]

This lawsuit was later settled out of court by USAA paying the injured party approximately $23,000.00.

USAA filed suit against Universal seeking to recover any costs it would incur in its representation of Murdaugh at trial or in settling the lawsuit without a trial. USAA alleged that the language in Universal's policy made the Universal policy primary to the USAA policy and that Universal had breached its contractual obligations in declining to represent Murdaugh. USAA alleged in the alternative that Universal owed it a pro-rata share of the expenses to be incurred by representing Murdaugh and prayed for declaratory judgment for all sums to be incurred on the ground that Universal was legally bound to afford primary liability coverage to Murdaugh.

Universal answered with general denials to USAA's allegations and moved for dismissal under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Universal alleged that the language contained in its policy clearly established in this instance that it was not responsible for primary coverage and alleged, in the alternative, the most for which they would be liable was a pro-rata share of the expenses incurred by USAA. Universal provided this pertinent language found in the general conditions section of its policy:

> OTHER INSURANCE — Unless stated otherwise in a Coverage Part, this insurance is excess over any other insurance, whether it is collectible or not.

> If more than one Coverage Part should insure a LOSS or INJURY the most WE will pay is the highest limit applicable. The limit under that Coverage Part will be inclusive of the lower limit in the other Coverage Part(s), not in addition to them.

Universal also provided this pertinent language from the garage insurance section of its policy:

> WHO IS AN INSURED — With respect to GARAGE OPERATIONS, other than the AUTO HAZARD or INJURY as defined in Group 5:

> * * *

> With respect to the AUTO HAZARD:

> * * *

3. Any other person or organization required by law to be INSURED while using an AUTO covered by the Coverage Part with the scope of YOUR permission.

OTHER INSURANCE — The insurance afforded by this Coverage Part is primary, except it is excess:

* * *

(2) for any person or organization who becomes an INSURED under this Coverage Part as required by law.

Finally, Universal alleged that the language found in the USAA policy established that the car provided by Helmold Ford and driven by Murdaugh's son was a "replacement" vehicle and this established that USAA was responsible for primary liability coverage. The applicable language of the USAA policy is as follows:

"Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you became the owner:

    a. A private passenger auto;

* * *

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced.

This case came on for trial on 29 October 1990. Both parties waived trial by jury and agreed that the trial court may make findings of fact and reach appropriate conclusions of law. The trial court found that both policies contained "other insurance" clauses as attempts to make the coverage provided under their respective policies contingent upon the occurrence of certain events. Further, the trial court found that the Murdaughs were insureds under the Universal policy; that the Universal policy did not provide other "applicable liability insurance" or "other collectible insurance" within the meaning of the "Other Insurance" clause found in the USAA policy; and that the coverage provided under the Universal policy was in excess of the USAA policy.

Finally, the trial court found that USAA specifically contracted to defend the Murdaughs and provide primary liability coverage, that this coverage was sufficient to cover the expenses of the

UNITED SERVICES AUTO. ASSN. v. UNIVERSAL UNDERWRITERS INS. CO.

[106 N.C. App. 465 (1992)]

lawsuit against the Murdaughs and that Universal owed no duty to provide a defense to the Murdaughs or pay any of the defense costs. The trial court concluded USAA should not recover any amount from Universal and dismissed the action. USAA appeals.

*Nichols, Caffrey, Hill, Evans & Murrelle, by Karl N. Hill, Jr., for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Reid Russell, for defendant-appellee.*

WELLS, Judge.

This case is controlled by our decision in *United Services Auto. Assn. v. Universal Underwriters Ins. Co.*, 104 N.C. App. 206, 408 S.E.2d 750, *disc. review allowed*, 330 N.C. 445, 412 S.E.2d 81 (1991). In *United Services*, this Court was faced with the identical issue of determining primary and secondary coverage between insurance policies issued by Universal and USAA. The facts of *United Services* reveal that USAA insured cars owned by Sanford E. Isenhour (hereinafter "Isenhour"). Universal provided coverage to Warden Motors in Forsyth County, North Carolina. Isenhour went to Warden Motors on 27 January 1988 for the purpose of purchasing a truck and was given permission to test drive a 1981 Ford truck. Isenhour ran into the rear of another vehicle while test driving the truck. As a result of this collision, the owner of the other vehicle filed a personal injury action against Isenhour which was eventually settled by USAA.

USAA then made demands on Universal to reimburse them for the cost of settling the Isenhour case which Universal refused. USAA then filed a declaratory action seeking a declaration that the garage policy issued by Universal was primary coverage in an accident involving an automobile owned by Warden Motors. The trial court then examined pertinent provisions in each policy and concluded that the Universal policy provided primary coverage. On appeal, this Court examined the applicable provisions found in the USAA and Universal policies and determined that the trial court was correct in determining the Universal policy provided primary coverage.

Our review of the *United Services* case and the present case reveals that these cases are not distinguishable. The competing provisions in *United Services* and the present case are nearly iden-

STATE ex rel. LONG v. INTERSTATE CASUALTY INS. CO.

[106 N.C. App. 470 (1992)]

tical and the facts relating to the application of these provisions are nearly identical as well. Therefore, we are bound by this Court's rationale and decision in *United Services*. Accordingly, the decision of the trial court in this case is reversed and this case is remanded for entry of judgment consistent with this opinion.

Reversed and remanded.

Judges LEWIS and WALKER concur.